Donna Cole **WINTERS,**
Plaintiff–Appellee,

v.

**COSTCO WHOLESALE CORPORATION,**
a Washington corporation; Concept Administrators, Inc., a California corporation, Defendants–Appellants.

No. 93–35851.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1994.

Decided March 6, 1995.

Warren J. Rheaume and James B. Bristol, Foster, Pepper & Shefelman, Seattle, WA, for defendants-appellants.

Lish Whitson and Richard E. Spoonemore, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, WA, for plaintiff-appellee.

Before: LAY,* TROTT and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Costco Wholesale Group Benefits Program (the "Plan") and Concept Administrators, Inc. (the "Plan Administrator"), appeal the district court's summary judgment in favor of Donna Cole Winters in her action seeking reimbursement from the Plan for medical expenses related to a gamete intra-fallopian transfer ("GIFT") procedure. The Plan is an employee welfare benefit plan subject to regulation under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. We reverse and remand.

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## I.

### FACTS AND PRIOR PROCEEDINGS

As a Costco employee, Winters was a participant in the company's self-insured ERISA health benefits plan. Winters filed a timely claim for reimbursement of expenses related to a GIFT procedure performed on December 17, 1990. The procedure involves retrieving eggs from the patient's ovaries and placing the eggs, along with sperm, in the patient's fallopian tube.

Section 6.8 of the health plan excludes "[c]harges not reasonably necessary for the diagnosis and treatment of Illness or Injury." Section 6.31 of the plan excludes from coverage "[c]harges in connection with in-vitro fertilization." There is no mention of GIFT procedures. Section 14.9 provides that "[t]he Plan Administrator ha[s] the absolute discretion and authority to construe disputed or seemingly inconsistent provisions of the Plan and to make all decisions regarding eligibility and/or entitlement to coverage or benefits."

Winters' claim was denied by Concept Administrators, Inc., Costco's third-party claims administrator, as a charge in connection with in-vitro fertilization. The denial was affirmed by Costco[1] with advice from Ethix Northwest, a consulting firm to health benefits providers.

Winters subsequently filed a case against the Plan and the Plan Administrator, challenging the denial of benefits in state court. The defendants removed the case to the district court. Both sides moved for summary judgment. The district court granted Winters summary judgment under ERISA, determining that she is entitled to reimbursement for the expenses of the GIFT procedure performed on December 17, 1990.

The court concluded that "[u]nder the 'plain and ordinary meaning' of IVF as provided by the dictionary and medical text sources, the administrator's decision cannot stand because it conflicts with that meaning and therefore constitutes an abuse of discre-

tion. GIFT, unlike IVF, involves in *vivo*—specifically, intrafallopian—fertilization of the egg." (Emphasis added.) The court found it unnecessary to address Winters' argument that the standard of review should be less deferential in view of the Plan Administrator's conflict of interest, because Winters "prevail[s] even under the more deferential abuse of discretion standard."

Alternatively, the court explained that "[i]f the 'plain and ordinary meanings' of IVF and GIFT set out above were not used, then 'IVF'—the term used in the plan—would have to be deemed ambiguous." Noting that defendants' own expert testified in his deposition that the policy "may be ambiguous" with respect to the GIFT procedure and that this could create confusion, the court observed that the rule of *contra proferentem* would result in the ambiguity being resolved in Winters' favor. The Plan and the Plan Administrator (collectively referred to as "Costco") timely appeal.

## II.

### STANDARD OF REVIEW

■■ Where an ERISA plan vests the administrator with discretionary authority to determine benefit eligibility, "a district court may review the administrator's determinations only for an abuse of discretion." *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir.1993) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)). This court reviews the district court's application of this standard and the conclusion that Costco abused its discretion *de novo*. *Id.*

■ In this case the Plan Administrator is the employer. Therefore, this court "impose[s] a more *stringent* version of the abuse of discretion standard" to Costco's decision to deny Winters health benefits. *Id.* at 1474 (internal quotation omitted). This court reviews *de novo* whether the plan's terms are

---

1. The Costco Wholesale Group Benefits Committee is the Plan Administrator within the meaning of section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A). Concept Administrators acts as an agent of the Plan Administrator under an

agreement with Costco and is responsible for processing claims for Plan benefits. Concept's decisions are subject to review by the Plan Administrator.

ambiguous. *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir.1993); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 537 (9th Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).

## III.

### DISCUSSION

Costco makes two basic arguments on appeal. First, Costco argues that the district court applied the wrong standard to review the interpretation of the Plan by the Plan Administrator, and should have given deference to the Plan Administrator's interpretation, rather than apply the doctrine of *contra proferentem.* Second, Costco argues that the district court's interpretation of the Plan under *contra proferentem* was not only improper, but incomplete, because it did not address or consider Plan provisions concerning "covered charges."

■ Costco contends that while the district court purported to apply an abuse of discretion standard to the Plan Administrator's denial decision, it actually did not accord the decision any deference, and instead substituted its own definition of "in vitro fertilization." Section 14.9 of the Plan expressly grants absolute discretionary authority to the Plan Administrator to "interpret or construe all provisions of the Plan" and "construe disputed or seemingly inconsistent provisions of the Plan and to make all decisions regarding eligibility and/or entitlement to coverage or benefits." This is sufficient to trigger the deferential abuse of discretion standard of review. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 956; *Eley v. Boeing Co.,* 945 F.2d 276, 278 (9th Cir.1991). Because the employer is the administrator, a conflict of interest exists, and we therefore "impose a more *stringent* version of the abuse of discretion standard" to Costco's decision. *Taft,* 9 F.3d at 1474 (internal quotation omitted); *see also Eley,* 945 F.2d at 279.

■ "[T]he abuse of discretion standard permits the district court to review only the evidence presented to the plan trustees." *Taft,* 9 F.3d at 1471 (internal quotation and brackets omitted); *see also McKenzie ·v. General Tel. Co.*, 41 F.3d 1310, 1316 (9th

Cir.1994). Because Costco gave an explanation for the denial of benefits, the question is whether it abused its discretion in construing provisions of the plan in a way that conflicts with the plain language of the plan. *See Eley,* 945 F.2d at 279.

■ In evaluating Winters' claim, the Plan Administrator relied on a statement of a consulting physician that GIFT consists of surgical removal of eggs from the ovaries of the patient, combining the eggs with sperm outside of the patient's body, or "in vitro," and then placement of the same into the patient's fallopian tube. The Plan Administrator also reviewed Winters' medical records from the University of Washington Medical Center which characterized her procedure as "in vitro."

Winters has vigorously maintained, and the district court agreed, that GIFT and in vitro fertilization are distinguishable. However, this does not necessarily demonstrate that the interpretation given to "in vitro fertilization" by Costco clearly conflicts with the plain language of the Plan. *See id.* (not an abuse of discretion to interpret a screening test as a "diagnostic test" and deny benefits on that basis). In *Eley,* the affidavits submitted on behalf of the employer stating that a Pap test is referred to as a diagnostic test by at least some of the medical academic community were not refuted. *Id.* Here, not only did the Plan Administrator's medical consultant characterize GIFT as involving "in vitro" aspects, Winters' own medical records for the procedure contained "IVF" notations. Thus, as in *Eley,* we cannot say that the interpretation given to "in vitro" by Costco clearly conflicts with the plain language of the Plan. *See also Taft,* 9 F.3d at 1473 ("In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion.") "Our inquiry is not into whose interpretation of the plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Barnett v. Kaiser Found. Health Plan, Inc.*, 32 F.3d 413, 416 (9th Cir.1994) (quotation and brackets omitted). Based on the evidence in the administrative record, Costco's interpretation

was not unreasonable. The Plan made clear that the Plan Administrator had the final determination of benefit decisions. The district court erred in second-guessing the exercise of discretion, because there was no abuse of that discretion.

As in *Eley*, the district court did not evaluate Costco's dual role as employer and Plan Administrator. *Eley*, 945 F.2d at 279. "The precise nature of the less deferential review in this context is not clear." *Taft*, 9 F.3d at 1474. However, even if Costco has an interest in broadly construing the in vitro exclusion, there are no indications that the conflict had an impact on the decision to deny benefits. *See id.* (no evidence that company acted in bad faith or with improper motives at any time during employee's twenty-five years of employment). We can discern no reason why the heightened abuse of discretion review would change the result in this case. *See id.; Eley*, 945 F.2d at 279.

In an alternate ruling, the district court held that the term "in vitro fertilization" was ambiguous, and that the ambiguity should have been resolved in Winters' favor under the rule of *contra proferentem. See Kunin*, 910 F.2d at 538–39. In *Kunin*, the court held in the alternative that *contra proferentem* applied in that case, which involved an ERISA-governed insurance policy purchased by the employer. *Id.* at 539–41.

However, as in *Eley, Kunin* does not alter the result in this case. *See Eley*, 945 F.2d at 279–80. *Eley* distinguished *Kunin* on the grounds that the plan in *Eley*, unlike the plan in *Kunin*, (1) was the result of collective bargaining, and (2) was self-funded. *Id.* at 280. While the Plan at issue here was not the result of collective bargaining, it is self-funded.

 Furthermore, it is not proper to rely on this principle of construction where, as here, the Plan grants the fiduciary explicit discretion to interpret the Plan. In *Kunin*, we explained that *contra proferentem* "is based upon the principle of contract construction that when one party is responsible for the drafting of an instrument, *absent evidence indicating the intention of the parties*, any ambiguity will be resolved against the drafter." *Kunin*, 910 F.2d at 539 (quota-

tion omitted; emphasis added). In contrast, the Plan here states that the Plan Administrator has "the absolute discretion and authority to construe disputed or seemingly inconsistent provisions of the Plan and to make all decisions regarding eligibility and/or entitlement to coverage or benefits." The Plan thus states how Plan terms are to be interpreted, and the general rule of *contra proferentem* does not apply. *See O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.,* 37 F.3d 55, 61 (2d Cir. 1994) ("We are less inclined to rely on [*contra proferentem*] where, as here, the plan grants the fiduciary discretion to interpret the plan."). We hold that the rule of *contra proferentem* is not applicable to self-funded ERISA plans that bestow explicit discretionary authority upon an administrator to determine eligibility for benefits or to construe the terms of the plan.

In view of our holding, we need not address Costco's argument that the district court's application of *contra proferentem* resulted in the anomalous ruling that GIFT must be covered under the Plan, because it is different than in vitro fertilization, even though the Plan does not include any reproductive procedures in its "Covered Charges" provisions.

Subsequent to the district court's decision, we held in *Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 387 (9th Cir. 1994), that the doctrine of reasonable expectations applies as a principle of federal common law controlling interpretation of ERISA-governed insurance contracts. In that case, a group health plan denied liability to a claimant based on a pre-existing condition exclusion. *Id.* at 386. Review of the plan at issue revealed that the plan "chose to bury one of the plan's most significant provisions amidst definitions, rather than forthrightly stating the pre-existing conditions exclusion in the operative clauses of the plan description." *Id.* at 385. We held that because the plan's attempted exclusion was not clear, plain, and conspicuous enough to negate the claimant's objectively reasonable expectations of coverage, it was unenforceable and the plan was liable for the coverage at issue. *Id.* at 387.

Unlike the claimant in *Saltarelli,* Winters had no objectively reasonable expectation of coverage for the GIFT procedure. Costco made its exclusionary clauses conspicuous, plain and clear. The clauses were placed so their relationship to other policy terms was obvious. The exclusionary clauses were listed under an appropriate heading in the Plan table of contents. The exclusions were clearly numbered, placed under underlined headings, and set off in separate paragraphs. Winters was also notified prior to this medical treatment, through two separate letters, that in vitro fertilization procedures were excluded from coverage because they are not medically necessary for treatment of an accidental injury or illness. We agree with Costco that there is no evidence in the record upon which a reasonable trier of fact could find an objective, reasonable expectation of coverage on the part of Winters.

## IV.

### CONCLUSION

We reverse and remand with instructions to enter judgment in favor of Costco.

**REVERSED AND REMANDED.**