**ESTATE OF John Dennis SHOCKLEY, Plaintiff–Appellant,**

v.

**ALYESKA PIPELINE SERVICE COMPANY; Alyeska Pipeline Service Company Pension Plan For Operating Company Employees, Defendants–Appellees.**

Nos. 96–35245, 96–35387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1997.

Decided Nov. 24, 1997.

Trigg T. Davis, Davis & Goerig, Anchorage, AK, for plaintiff-appellant.

Jerry E. Melcher, Andrew F. Behrend, Heller Ehrman White & McAuliffe, Anchorage, AK, for defendants-appellees.

Before: WALLACE, JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.

WALLACE, Circuit Judge.

The Estate of John Dennis Shockley (Estate) appeals from both the district court's judgment rejecting its claim for Employee Retirement Income Security Act (ERISA) benefits under Alyeska Pipeline Service Company's (Alyeska) retirement plan and the order imposing attorneys' fees. The district court exercised jurisdiction under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(e)(1). We have jurisdiction of this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.

I

Shockley was employed by Alyeska from June 27, 1980, until his death on October 20, 1990. At all times relevant to this dispute, Shockley was a participant in the Alyeska Pipeline Service Company Pension Plan for Operating Company Employees (Plan). At his death, Shockley was 50 years old, unmarried, and had five children.

After Shockley's death, the Estate contacted Alyeska and requested survivor's benefits under the Plan. The Plan's retirement committee, which is responsible for final decisions on whether to deny benefits under the Plan, rejected the Estate's claim.

The Estate subsequently brought this action pursuant to ERISA to compel payment of benefits under the Plan. On cross-motions for summary judgment, the district court held that the Estate was not entitled to any benefits under the Plan because the language of the Plan provided benefits only to spouses of employees who, like Shockley, died before they were retired or eligible for early retirement. The court also held that Alyeska did not owe any benefits to the Estate under the Plan because Shockley "had no reasonable

expectation" under the Plan that his estate would benefit under the circumstances of his death. The court then granted Alyeska's motion for attorneys' fees under ERISA, awarding it approximately ten percent of its requested attorneys' fees.

II

■ We review the district court's summary judgment de novo. *Parker v. BankAmerica Corp.*, 50 F.3d 757, 762 (9th Cir. 1995). The district court reviews a denial of ERISA benefits de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 763, *quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (*Firestone*). Where "the benefit plan gives the administrator such authority," as in this case, "the appropriate standard of review is abuse of discretion." *Id.*

However, when the plan administrator is also the employer, as here, we have imposed a "more searching" scrutiny if the "beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Snow v. Standard Insur.*, 87 F.3d 327, 331 (9th Cir.1996), *quoting Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1323 (9th Cir.1995).

■ The Estate contends that we should impose this higher level of scrutiny, but provides no evidence that "the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Id.* We therefore review the decision of the retirement committee for abuse of discretion. Under the abuse of discretion standard, the retirement committee's decision should be upheld "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *MacDonald v. Pan American World Airways, Inc.*, 859 F.2d 742, 744 (9th Cir.1988) (*MacDonald*).

The Estate asserts that it is entitled to benefits under the Plan because of both the language of the Plan and the "reasonable

expectations" principle of *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir.1994) (*Saltarelli*). We address these arguments in turn.

## A.

■ First, the Estate argues that the retirement committee abused its discretion by disregarding the language of the Plan. The Estate contends that the Plan provides a benefit for the beneficiaries of unmarried, vested employees who, like Shockley, died before they were retired or eligible for early retirement. The Estate relies on several isolated provisions of the Summary Plan Description (SPD) and the Plan.

The Estate first quotes paragraph 5.4 of article V of the Plan, entitled "Eligibility for Retirement Income": "A Participant whose Termination Date occurs before he is eligible to retire on a Normal or Early Retirement Date but after he has completed 10 or more years of Service shall be entitled to a Deferred Vested Retirement Income determined pursuant to subparagraph (a) or subparagraph (b) of Paragraph 6.5...." According to the Estate, since Shockley had completed ten years of service and his termination date, his death, occurred before he was eligible to retire, he was entitled to his deferred vested retirement income.

This section, however, as its title suggests, only deals with participants' retirement income. Subparagraphs 6.5(a) and (b), referred to in paragraph 5.4 cited by the Estate, only refer to deferred vested retirement income, which vested *employees* of Alyeska can receive after retiring, even if they had previously left Alyeska before retirement age. There is no provision here for beneficiaries of employees to receive the employee's vested retirement income. In addition, Shockley had no current claim to retirement income when he died, because he died before retirement age, when his vested benefits would have been paid out.

The Estate also claims survivor benefits under the Plan, but can point to no language in the Plan itself. Rather, it quotes the following language from the SPD: "While the main purpose of the Pension Plan is to provide monthly retirement income during your lifetime, it can also provide valuable protection for your spouse or beneficiary at your death—either before or after you retire."

The Estate, however, overlooks the language following the quotation: "This protection—rather like an insurance policy on your benefit—is provided at no charge if you are Retired, or Actively employed, but eligible for early retirement." Since Shockley was neither retired nor eligible for early retirement, this passage does not further the Estate's argument.

Finally, the Estate quotes part of an SPD section on benefits to surviving spouses of active employees. The full section reads: "Benefits are also payable to the surviving spouses of active employees who are vested but not eligible for early retirement, as well as those who have terminated employment with a vested benefit." This passage, read in context, only provides for a benefit to surviving *spouses* of employees who died with vested retirement benefits. Although Shockley had vested retirement benefits at his death, he had no spouse at death, and thus the Estate is not entitled to survivor benefits.

The language of the Plan therefore provides no survivor benefits to beneficiaries of unmarried employees who are vested in the retirement plan but not eligible for retirement or early retirement. The Estate is simply wrong in its contention that because the Plan and the SPD "did not contain words denying benefits to unmarried participants' estates," they should be construed to affirmatively provide benefits. We are not surprised that no case is cited for this strange assertion.

The retirement committee did not abuse its discretion in denying the Estate benefits under the Plan. Its decision was "based upon a reasonable interpretation of the plan's terms" and the Estate has made no showing that it was made in bad faith. *MacDonald*, 859 F.2d at 744.

## B.

■ The Estate's second contention is that it is entitled to survivor benefits from the

Plan because these would comport with its "reasonable expectations." The district court addressed, but held against, the Estate on this issue. The Estate relies on *Saltarelli*, which adopted "the doctrine of reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance contracts." 35 F.3d at 387.

We first decide whether *Saltarelli* applies to this case. Contrary to the Estate's argument, we have never applied the doctrine of reasonable expectations to all ERISA plans. Our holding that ERISA requires summary plan descriptions to "describe 'circumstances which may result in disqualification, ineligibility, or denial or loss of benefits' and ... 'be written in a manner calculated to be understood by the average plan participant'" did not address the reasonable expectations doctrine. *Arnold v. Arrow Transp. Co.*, 926 F.2d 782, 785 (9th Cir.1991), *quoting* 29 U.S.C. § 1022.

We have only applied the doctrine of reasonable expectations to insurance contracts, including ERISA insurance contracts. *See Saltarelli*, 35 F.3d at 385; *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554–55 (9th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). In applying the doctrine to insurance contracts, we commented that the doctrine "grew out of the law of adhesion contracts and construction of ambiguities in insurance policies." *Saltarelli*, 35 F.3d at 386. Thus, because there was a body of law dealing generally with insurance policy interpretation, we concluded this law should apply to insurance policies that happened to be ERISA insurance policies. But that was the end of our reasoning.

There is no reason to extend this doctrine beyond insurance contracts. It was developed for and applies directly to insurance policies. Extending this insurance interpretation to this case is not authorized by *Saltarelli* and is inconsistent with its reasoning. Indeed, if we applied it to this case, there would be no logical stopping place: it would apply to all provisions of all ERISA plans. In addition, extending the doctrine to ERISA pension plans would be inconsistent with circuit and Supreme Court precedent requiring

abuse of discretion review of a retirement committee's actions. *See Firestone*, 489 U.S. at 115, 109 S.Ct. at 956; *MacDonald*, 859 F.2d at 744.

Because we hold that the reasonable expectation theory adopted for ERISA-governed insurance policies by *Saltarelli* does not extend to ERISA-governed pension plans, we need not consider the district court's reasoning that the Estate does not benefit from application of the doctrine.

### III

■ We review the district court's decision to award fees against an ERISA claimant for abuse of discretion. *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 231 (9th Cir.1994) (*Corder*). The Estate contests the award of fees against it for three reasons.

The Estate first argues that because it lost on the merits, it was not a beneficiary of the Plan and thus is not liable for fees under 29 U.S.C. § 1132(g)(1). Whether the Estate was a beneficiary or not, it was a "participant" and thus liable for fees under section 1132(g)(1).

The Estate next argues that the district court erroneously relied on Alaska's "English Rule" in assessing attorneys' fees. A plain reading of the district court's order and order on motion for reconsideration rebuts this interpretation.

Finally, the Estate argues that the district court misapplied the equitable factors from *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452–53 (9th Cir.1980), in its determination to award attorneys' fees under ERISA.

> The *Hummell* factors are: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question

regarding ERISA; and (5) the relative merits of the parties' positions.

*Corder,* 53 F.3d at 231.

The district court weighed these factors, finding that the action was not brought in bad faith; "the estate has little ability to pay" but "that exigency may very well be the result of mismanagement by the personal representative"; the action was unlikely to benefit or educate anyone; and although "the defendants' position had more merit than the estate's, .... it is the court's lasting impression that Alyeska's plan and/or employee handbook dealt with the question presented by this case in an inartful fashion."

The court particularly focused on the deterrence factor and granted an award of only approximately ten percent of the requested fees, stating that "the court has significantly deferred to what it believes to be the circuit court's strong signal that it disfavors awards of attorney's fees against ERISA plaintiffs who seek pension benefits despite the express statutory authority therefor."

■ We first disabuse the district court of the suggestion that we favor one side or the other in ERISA fee cases. The statute is clear on its face—the playing field is level. In *Corder,* we did hold that "the district court abused its discretion in awarding *full* fees against them." *Id.* (emphasis added). We pointed out that our analysis was consistent with and was a part of the *Hummell* factors. Thus, our analysis in this case must focus only on the *Hummell* factors, without favoring one side or the other.

■ We hold that the court did not abuse its discretion in applying the *Hummell* factors. The first factor, lack of bad faith, weighs in favor of the Estate, but this is balanced by the fourth factor, the insignificance of the legal question and lack of benefit to others, which weighs in favor of Alyeska. The ability-to-pay factor does not add anything useful, because any inability to pay was likely the fault of the personal representative. We are thus left only with the deterrence and relative merit factors. The Estate's attempt to gain unenumerated benefits simply because they have not been specifically excluded has no merit. The district court appropriately took into account the possibility of overdeterrence and "establish[ed] an appropriate amount that will not unduly chill meritorious claims." *Corder,* 53 F.3d at 232.

■ To overturn this award, we must have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Smith v. Jackson,* 84 F.3d 1213, 1221 (9th Cir.1996). We do not have such a definite and firm conviction, and, therefore, will not overturn the award of fees.

AFFIRMED.

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the judgment that the Estate was not entitled to benefits but dissent as to the award of attorney's fees.

According to the Plan, if an application for benefits is denied, the Retirement Committee has certain duties including notifying the claimant, offering the claimant a reasonable opportunity for review and putting in the notice a reference to the pertinent provisions of the Plan. The record indicates that the Shockley estate claim was first denied on June 19, 1992 by letter of Betty Metz, Assistant Annuitant Affairs Associate; she repeated the denial by letter of August 10, 1992. On May 26, 1993, L.R. Trotter, senior attorney for the company, denied the claim. These three denials were not denials by the Retirement Committee.

The Shockley estate then wrote the chairman of the Retirement Committee. By letter of October 3, 1993 he replied that the Committee had reviewed the decision to deny the claim and had decided "to uphold the earlier decision." The letter referred to the summary plan description which was attached with the relevant portion "marked," but there was no reference to the Plan itself.

A fiduciary is properly held to punctiliousness in the discharge of its duties—*a fortiori* when the fiduciary is also the employer. Here, for over a year Alyeska stalled, failing to follow the Plan and in the end not making an independent decision but affirming the

staff decisions. Failing to follow proper procedure, Alyeska should not be awarded attorney's fees for litigation to which its own sloppy methods contributed. It is foreign to the concepts of trust law that the trustee should be able to mulct a putative beneficiary whose claim it improperly processed.

The factors set out in our leading case, *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980), disfavor the award of attorney's fees against plaintiff-participants. *See, e.g., Corder v. Howard Johnson & Co.*, 53 F.3d 225 (9th Cir.1994). The district court found that there was no culpability or bad faith on the part of the Estate. I can find no case in which an assessment of attorney's fees against a plaintiff-participant was upheld when the plaintiff-participant did not engage in culpable conduct. It is, moreover, unreasonable to conclude that plaintiffs with meritorious claims will not be deterred by an award of fees against a plaintiff-participant when in this case the court found that the suit did have some merit and yet the defendant fiduciary is awarded fees. A minor miscarriage of justice is still a miscarriage and should be corrected here.