**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONNA SCHARFF,
                    *Plaintiff-Appellant,*

            v.

RAYTHEON COMPANY SHORT TERM
DISABILITY PLAN; RAYTHEON
COMPANY LONG TERM DISABILITY
PLAN,
                    *Defendants-Appellees.*

No. 07-55951

D.C. No.
CV-07-00134-PSG

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
February 4, 2009—Pasadena, California

Filed September 9, 2009

Before: Harry Pregerson, Susan P. Graber, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Pregerson

12807

**COUNSEL**

Peter S. Sessions and Lisa S. Kantor, Kantor & Kantor LLP, Northridge, California, for the plaintiff-appellant.

Ariadne Staples, Metropolitan Life Insurance Company, Long Island City, New York; and Robert K. Renner, Barger & Wolen LLP, Irvine, California, for the defendants-appellees.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Donna Scharff worked for the Raytheon Company. The Raytheon Company employees' contributions, which are held in the Raytheon Employees Disability Trust ("Trust"), and the Company jointly fund Defendant Raytheon Company

Short Term Disability Plan ("Short Term Plan"). Only the Trust funds Defendant Raytheon Company Long Term Disability Plan ("Long Term Plan"). Metropolitan Life Insurance Company ("MetLife") administers, but does not insure, the Plans. The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), governs both Plans.

The Plans contained a contractual one-year statute of limitations. After MetLife denied her claim for Short Term Plan benefits, Plaintiff brought suit in federal court seeking benefits under both Plans, but she filed the action twenty days after the one-year contractual statute of limitations had lapsed. The district court dismissed the action as untimely. We hold that even if the doctrine of "reasonable expectations" applied here, the one-year statute of limitations met its requirements and also met the statutory and regulatory standards for disclosure. We decline to import into federal common law a California regulation requiring insurers to inform claimants expressly of statutes of limitations that may bar their claims. Accordingly, we affirm the judgment dismissing the action.

## FACTUAL AND PROCEDURAL HISTORY

When Plaintiff applied for short-term disability benefits, she was an employee of the Raytheon Company and a participant in the Raytheon Company's employee benefit plans. As noted above, both the Short Term and Long Term Plans were self-funded. MetLife administers the plans and has sole discretionary authority to determine a participant's eligibility for benefits.

Raytheon provided Plaintiff and other plan participants with a Summary Plan Description ("SPD") called "Your 2005 Benefits Handbook." The SPD is divided into chapters that address the different benefits available to Raytheon employees. The final chapter of the document is entitled "**Administrative**" and provides participants with information relating to

their rights and obligations under all of the benefit plans discussed in earlier chapters. The Administrative chapter contains a section titled "*Your Right to Appeal a Denied Claim*," which explains the procedure for appealing a denied claim to MetLife. On the same page, a large-typeface, bolded heading, "**Special Rules for Disability and Health Claims**," introduces a paragraph that cautions: "With respect to disability and health plans . . . time limits for deciding and appealing claims are significantly different from those for [other] claims . . . ." Later in the Administrative chapter is a section titled "**Your Rights under ERISA**." A subsection, titled "*Enforce Your Rights*," states: "If you have a claim for benefits that is denied or ignored in whole or in part, you may file suit in a state or federal court."

The "**Disability**" chapter, which contains information about the Plan under which Plaintiff sought benefits, sets forth the deadline for bringing a lawsuit regarding a denied claim. The last page of this chapter contains a paragraph with the large-typeface, bolded, and italicized heading, "*Claims Appeal Procedure*." That paragraph states:

> The procedure to be followed to appeal a denied claim is explained in the *Administrative* section. It is important to note that under the applicable [Plan] documents, any action at law or in equity must be commenced within one year of the denial of the appeal from an initial claim denial, regardless of any state or federal statutes establishing provisions relating to limitations of actions.

On April 15, 2005, MetLife received a claim from Plaintiff for Short Term Plan benefits. The claim was denied in a letter dated July 18, 2005, on the ground that the clinical reports did not show that Plaintiff had a condition that would render her totally disabled and unable to work. The letter described the MetLife process for appealing the denial. Plaintiff submitted additional medical information without formally appealing the

denial. MetLife reviewed the information and issued a second denial letter on September 16, 2005. Plaintiff formally appealed that denial on October 28, 2005.

On January 12, 2006, MetLife issued a decision upholding its previous determination. That letter provided, in relevant part, that "[t]his determination is the final decision on review and constitutes completion of the full and fair review required by the [Short Term] Plan and federal law." The letter informed Plaintiff that if she wished to pursue the matter further, "[she] should consult the information provided concerning [her] rights, as set forth in the [SPD]." The letter went on to explain that no further administrative appeals were available concerning Plaintiff's claim for disability benefits, but that she had a "right to bring a civil action under Section 502(a) of [ERISA]." MetLife also promised to provide Plaintiff with copies of the documents relevant to her claim upon her request. None of the letters mentioned the contractual one-year statute of limitations.

Following receipt of the final denial letter, Plaintiff 's daughter and personal representative, Jessica Leighty, filed a complaint with the California Department of Insurance on Plaintiff 's behalf. On June 14, 2006, MetLife responded to the Department, informing it that, because the Plan is not funded through an insurance policy, it is not subject to state laws governing insurers. MetLife also wrote to Ms. Leighty to explain how it had administered Plaintiff's claim. That letter reminded her that "denial of the claim was upheld on January 12, 2006."

Under the one-year statute of limitations contained in the SPD, the deadline to file suit was January 12, 2007. Plaintiff filed suit on February 1, 2007, twenty days after expiration of the limitations period. In her complaint, Plaintiff alleged that MetLife upheld its prior determination denying benefits in its June 14, 2006, letter to her daughter, rather than in its January 12, 2006, letter. Defendants moved to dismiss under Federal

Rule of Civil Procedure 12(b)(6), on the ground that the complaint was untimely. In her response, Plaintiff conceded that the statute of limitations ran on January 12, 2007, and that her complaint was untimely. She later conceded that the one-year limitation was reasonable, and she did not assert that the wording of the one-year limitations period was unclear. She argued, however, that her late filing should be excused because the limitations provision was placed neither in what she believed was the appropriate section of the SPD nor in the correspondence that she received from MetLife.

The district court first addressed whether an insurer may shorten the limitations period for bringing an ERISA suit and whether the contractual limitations period is enforceable, issues that Plaintiff does not raise on appeal and that we therefore do not consider. The court then declined to use the reasonable expectations doctrine to find that the limitations period was not displayed conspicuously enough, holding that the reasonable expectations rule has not been extended to self-funded benefits plans. The court also declined to apply section 2695.4(a) of title 10 of the California Code of Regulations, which provides that an insurer must disclose to a claimant any time limits that may apply to the claim. The court noted that state insurance regulation of self-funded plans, like the Plan at issue here, is preempted, and the California regulation has not been incorporated into federal common law. Plaintiff timely appeals.

## STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review de novo an order granting a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Madison v. Graham*, 316 F.3d 867, 869 (9th Cir. 2002). We must take all allegations of material fact in the complaint as true and must construe the facts in the light most favorable to Plaintiff. *Id.*

## DISCUSSION

### A. *Disclosure of the One-Year Deadline*

Plaintiff first argues that we should adopt the reasonable expectations doctrine to analyze the SPD and that we should hold that the placement and display of the deadline in this case violated participants' reasonable expectations. Defendants argue, in response, that the doctrine of reasonable expectations does not apply to self-funded welfare benefit plans. For the reasons explained below, we need not decide whether the reasonable expectations doctrine applies to self-funded welfare benefit plans.

**[1]** ERISA's central policy goal is to protect benefit plan participants "by requiring the disclosure and reporting to participants and beneficiaries of financial and other information . . . and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b); *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2006). To further that goal, employee benefit plans must provide plan participants with an SPD, which is the "statutorily established means of informing participants of the terms of the plan and its benefits," and which serves as "the employee's primary source of information regarding employment benefits." *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002) (internal quotation marks omitted); 29 U.S.C. § 1022(a).

**[2]** Section 1022(a) provides in pertinent part:

> The [SPD] shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

Section 1022(b) lists the specific information that the SPD is required to contain. One of the required pieces of information is any "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Accordingly, the SPD must explain the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" in a manner "calculated to be understood by the average plan participant," and that information must be "sufficiently accurate and comprehensive to reasonably apprise" plan participants of their rights and obligations under the plan. *Id.* § 1022(a) & (b).

The Federal Regulations further provide:

Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits.

29 C.F.R. § 2520.102-2(b). The SPD must also disclose limitations in close conjunction to benefits provisions, or refer the participant to the page numbers on which the relevant restrictions appear. *Id.*

Those are the relevant statutory and regulatory disclosure provisions relating to the SPD. In addition to those requirements, the federal courts have developed a body of ERISA federal common law. *See Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 (9th Cir. 1984) ("The courts are directed to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA, referring to and guided by principles of

state law when appropriate, but governed by the federal policies at issue.").

**[3]** It is one of those common law principles, the doctrine of reasonable expectations, that Plaintiff asks us to use to analyze the display and placement of the one-year deadline in this case. The doctrine can be summarized as follows:

> Under the so-called "doctrine of reasonable expectations," which is often applied in interpreting or construing policies of insurance, the meaning of an insurance policy is determined in accordance with the reasonable expectations of the insured. In other words, the meaning of the terms in an insurance policy is to be determined by considering it in light of whether a reasonable person in the position of the insured would expect coverage. The term "insured's reasonable expectations" refers to what a hypothetical reasonable insured would glean from the wording of the particular policy and kind of insurance at issue, rather than how a particular insured who happened to buy the policy might understand it.

16 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 49:20, at 111-12 (4th ed. 2000) (footnotes omitted). Plaintiff argues that the placement and display of the deadline failed to meet plan participants' reasonable expectations because (1) the deadline should have been placed in the Administrative chapter rather than the Disability chapter, and (2) the deadline should have been displayed more conspicuously in the text of the SPD.

Plaintiff is correct in asserting that we have incorporated the reasonable expectations doctrine into ERISA federal common law when we have interpreted insured plans. In *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994), we "adopt[ed] the doctrine of reasonable expectations as a principle of the uniform federal common law informing

interpretation of ERISA-governed insurance contracts." At issue in *Saltarelli* was a pre-existing conditions exclusion that appeared in the SPD. *Id.* at 385. We noted that the plan administrator "chose to bury one of the plan's most significant provisions amidst definitions, rather than forthrightly stating the pre-existing conditions exclusion in the operative clauses of the plan description." *Id.* We therefore held that the exclusion for pre-existing conditions "was not clear, plain, and conspicuous enough to negate layman Saltarelli's objectively reasonable expectations of coverage." *Id.* at 387.

We noted that the application of the reasonable expectations doctrine to ERISA insurance contract law was, at the time, an issue of first impression for our circuit. *Id.* at 386. We gave two reasons for adopting the doctrine into the federal common law: (1) "protecting the reasonable expectations of insureds appropriately serves the federal policies underlying ERISA," and (2) "at least thirty states ha[d] explicitly incorporated . . . the reasonable expectations doctrine into their own law, . . . demonstrat[ing] its widespread acceptance and vitality." *Id.* at 386-87.

After *Saltarelli*, we assumed, in dictum, that the reasonable expectations doctrine applied to a self-funded benefit plan. In *Winters v. Costco Wholesale Corp.*, 49 F.3d 550 (9th Cir. 1995), the plaintiff sought reimbursement from a self-funded benefit plan for a procedure similar to in vitro fertilization. The district court held that the plan administrator should not have denied benefits. *Id.* at 552. The administrator argued that the district court (1) applied the wrong standard of review to its decision and (2) improperly applied the doctrine of *contra proferentem*, under which ambiguities in a contract are construed against the contract's drafter. *Id.* at 553. After addressing those two issues, we discussed the holding of *Saltarelli*. *Id.* at 554-55. We then concluded—even though the plaintiff had not argued that the reasonable expectations doctrine applied to her case—that she had "no objectively reasonable

expectation of coverage" for her procedure because the SPD conspicuously exempted those types of procedures. *Id.* at 555.

We hemmed in the doctrine just two years after *Winters*. In *Estate of Shockley v. Alyeska Pipeline Service Co.*, 130 F.3d 403, 407 (9th Cir. 1997), we declined to extend *Saltarelli*'s rule to an ERISA pension plan. We held that the doctrine of reasonable expectations applies *only* to "insurance contracts, including ERISA insurance contracts." *Id.* We noted that the doctrine " 'grew out of the law of adhesion contracts and construction of ambiguities in insurance policies,' " *id.* (quoting *Saltarelli*, 35 F.3d at 386), so it made sense to apply the "body of law dealing generally with insurance policy interpretation" to "insurance policies that happened to be ERISA insurance policies." *Id.* In our view, there was "no reason to extend the doctrine beyond insurance contracts" because "[the doctrine] was developed for and applies directly to insurance policies." *Id.*

Self-funded benefit plans like Raytheon's are not insurance policies. As a result, *Estate of Shockley* would appear to bar application of the doctrine of reasonable expectations to the plan at issue here. But, at the same time, *Winters* could be read to have extended the doctrine implicitly to apply to self-funded ERISA welfare benefit plans. *Estate of Shockley* mistakenly cites *Winters* as an example of an ERISA insurance contract. *Estate of Shockley*, 130 F.3d at 407 (citing *Winters*, 49 F.3d at 554-55).

What we have, then, are two opinions that are seemingly in tension with one another: *Winters*, which applied the reasonable expectations doctrine to a self-funded plan, at least in dictum, and *Estate of Shockley*, which prohibits us from expanding the doctrine beyond insured plans. As a three-judge panel, we cannot overrule either decision. *Ross Island Sand & Gravel Co. v. Matson (In re Complaint of Ross Island Sand & Gravel)*, 226 F.3d 1015, 1018 (9th Cir. 2000) (per curiam).

**[4]** But we need not call for en banc consideration, nor try to harmonize the apparent conflict in our precedents. Assuming, without deciding, that the reasonable expectations doctrine applies, the SPD here met plan participants' reasonable expectations, in addition to fulfilling the statutory and regulatory requirements. *See Estate of Shockley*, 130 F.3d at 407 (treating the statutory disclosure requirements and the common law reasonable expectations doctrine as different inquiries). It is the statutory and regulatory requirements to which we turn next. Our task is to determine whether the deadline was "written in a manner calculated to be understood by the average plan participant" and whether it was "sufficiently accurate and comprehensive to reasonably apprise" participants of their rights and obligations under the plan. 29 U.S.C. § 1022(a). We must also ensure that the deadline was not minimized or otherwise obscured and that the limitations provision was placed near the benefits provisions. 29 C.F.R. § 2520.102-2(b).

**[5]** Preliminarily, we note that a statute of limitations for bringing suit qualifies as a circumstance "which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b); *see Dodson v. Woodmen of World Life Ins. Soc'y*, 109 F.3d 436, 439 (8th Cir. 1997) (noting that the omission from the SPD of a time limit for filing suit violated § 1022(b) because the time limit was a circumstance that might result in loss of benefits). Therefore, the placement and display of the deadline must meet the statutory and regulatory standards.

**[6]** We hold that the manner of disclosure in this case met those standards. First, placement of the deadline in the Disability chapter, rather than in the Administrative chapter (where Plaintiff argues it should have appeared) was reasonable. *See Abena v. Metro. Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008) (holding that placement of a contractual limitations period in a section entitled "Claims" was reasonable). The correspondence that MetLife sent to Plaintiff informed

her that she had a right to sue and that she could find more information about her rights in the SPD. A reasonable plan participant applying for *disability* benefits would be expected to read, in its entirety, the *Disability* chapter of the SPD, as it explains the rules relating to the benefits for which she is applying. The one-year deadline for filing suit regarding disability claims was, logically, placed at the end of the disability chapter, satisfying the nearness requirement of 29 C.F.R. § 2520.102-2(b).

**[7]** Second, within the Disability chapter, the deadline was written in a manner calculated to be understood by the average plan participant and was not minimized. 29 U.S.C. § 1022(a); 29 C.F.R. § 2520.102-2(b). A reasonable plan participant whose disability claim had been denied would proceed, naturally, to examine the information that appears under the large-typeface, bolded, and italicized heading, "***Claims Appeal Procedure.***" There, the participant would find out that, if she wishes to bring a lawsuit, she must do so within one year of MetLife's denial of the appeal of her claim. The deadline was not obscured by being placed in the middle of other terms relating to claims appeal procedure; nor was it relegated to "fine print." We believe that the average plan participant in Plaintiff's position would have located and understood the one-year deadline in the SPD.

**[8]** For these reasons, we hold that the placement and display of the one-year statute of limitations met the statutory and regulatory requirements. Turning, then, to the final issue concerning the wording of the SPD, we hold that the placement and display of the one-year statute of limitations sufficed to meet plan participants' reasonable expectations, assuming that the doctrine applies.

B. *Duty to Inform*

Plaintiff next argues that the one-year limitation should not be enforced because MetLife did not inform her of the time

limit in any of its correspondence to her. Plaintiff concedes that the Plan met all applicable ERISA disclosure requirements and that MetLife was not obligated under ERISA to inform her of the deadline. She argues, however, that we should impose an additional "duty to inform" on claims administrators, drawn from a California insurance regulation. We decline to do so.

**[9]** Plaintiff urges us to incorporate into ERISA federal common law the following California state insurance regulation: "Every insurer shall disclose to a first party claimant or beneficiary, all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant." Cal. Code Regs. tit. 10, § 2695.4(a). As noted above, under ERISA's "deemer clause," state insurance regulation of self-funded plans is preempted by ERISA. *Holliday*, 498 U.S. at 58. Plaintiff concedes that, because the Plans here are self-funded, the California regulation cannot be applied directly, but she maintains that we should adopt the California rule into the federal common law.

In support of this position, Plaintiff cites *Mogck v. Unum Life Insurance Co. of America*, 292 F.3d 1025 (9th Cir. 2002), where we stated in a footnote that we

> need not decide whether the amended California regulations[1] clarified an existing duty of the insurer to provide notice of a contractual statute of limitation, or whether a new duty to provide written notice was created, because, in any event, [the insurer's] correspondence was ineffective to trigger the policy's time limitation provision.

*Id.* at 1028 n.1 (footnote added). Plaintiff acknowledges that *Mogck* did not actually rule on whether the insurer has a duty

---

[1]The California regulation is not the same regulation at issue here.

to inform, but asserts that the fact that we even touched upon the issue (albeit in a footnote) implies that we believe the argument is plausible. We are not persuaded. Our statement that we need not decide an issue cannot be taken as an implicit endorsement of the argument that we expressly chose not to address.

**[10]** Plaintiff's argument fails for other reasons as well. As the Third Circuit has noted, "federal courts may not lightly create additional rights under the rubric of federal common law; we may exercise our common law authority to fashion new ERISA causes of action only where we deem it necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 573 n.5 (3d Cir. 2006) (internal quotation marks omitted). ERISA and its implementing regulations contain broad and detailed disclosure rules to protect plan beneficiaries. *See, e.g.*, 29 U.S.C. § 1021 (providing the disclosure and reporting requirements); *id.* § 1022 (describing the disclosure requirements for the SPD); *id.* § 1132(c) (imposing penalties on plan administrators who fail to disclose required information to plan participants); 29 C.F.R. §§ 2520.104b-1 to .104b-4, .104b-10 (providing detailed regulations for reporting and disclosure). We see no need to supplement the comprehensive scheme already in place for regulating plan administrators' disclosures to participants.

**[11]** We also must take into account that "Congress expects uniformity of decisions under ERISA." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1440 (9th Cir. 1990) (per curiam); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987) ("The uniformity of decision which the Act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws." (internal quotation marks omitted)). At least four circuits have held that plan participants who have been provided with an SPD are charged with constructive knowledge of the contents of the

document. *Clark v. NBD Bank, N.A.*, 3 F. App'x 500, 504-05 (6th Cir. 2001) (per curiam) (unpublished table decision); *Barnes v. Lacy*, 927 F.2d 539, 543 (11th Cir. 1991); *Schultz v. Metro. Life Ins. Co.*, 872 F.2d 676, 680 (5th Cir. 1989); *Castello v. Gamache*, 593 F.2d 358, 360-61 (8th Cir. 1979) (per curiam). The Fifth and Eighth Circuits specifically declined to require plan administrators to inform participants separately of provisions already contained in the SPD.

**[12]** To require plan administrators within the Ninth Circuit to inform participants separately of time limits already contained in the SPD, when other circuits have rejected a similar rule, would place the Ninth Circuit out of line with current federal common law and would inject a lack of uniformity into ERISA law. Moreover, large multistate employers often issue the same welfare benefit plan to cover all their employees, regardless of their locations. For these employers, a lack of uniformity among the circuits would be detrimental. In short, we decline to impose on plan administrators the additional requirements of California Code of Regulations title 10, section 2695.4(a), by adopting that rule into ERISA federal common law.

AFFIRMED.

---

PREGERSON, Circuit Judge, dissenting:

I respectfully dissent. I do not think that an average plan participant could successfully navigate through Raytheon's labyrinthine Summary Plan Description. In my view, the Summary Plan Description bounces a reader between important provisions in the *Disability* and *Administrative* chapters in a way that makes it all too easy to miss the one-year deadline for filing a claim under ERISA in federal court. First, I believe that the Summary Plan Description at issue does not meet the statutory and regulatory requirements governing

employee benefit plan disclosures. Those disclosures are required to be "*written in a manner calculated to be understood by the average plan participant.*" 29 U.S.C. § 1022(a) (emphasis added). Second, even if those statutory and regulatory requirements were met, we have already applied the doctrine of reasonable expectations to self-funded ERISA plans, so I would hold that the one-year deadline here is unenforceable because it was not set forth in a clear, plain and conspicuous statement in the plan.[1]

I.

The majority opinion holds that the placement and display of the one-year deadline meets the statutory and regulatory requirements provided by ERISA and ERISA's implementing regulations. I disagree.

A summary plan description must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Regulations also state that:

> The format of the summary plan description must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less promi-

---

[1] We have never addressed whether a contractual provision may validly shorten the limitations period for bringing an ERISA claim, as was done here. Scharff does not object to the one-year statute of limitations on that ground, and I do not address that argument here.

nent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations.

29 C.F.R. § 2520.102-2(b).

In concluding that the Summary Plan Description satisfies the statutory and regulatory requirements stated above, the majority opinion determines that a reasonable plan participant applying for disability benefits would be expected to read, in its entirety, the *Disability* chapter of the Summary Plan Description. Because the one-year deadline is placed within the *Disability* chapter and located at the end of that chapter, the majority opinion determines that notice of the one-year deadline was sufficient. The majority opinion also concludes that the one-year deadline is written in a manner calculated to be understood by the average plan participant. I cannot agree with the majority opinion's conclusions.

If a reasonable participant were to read the entire *Disability* chapter of the Summary Plan Description, the "Claims Appeal Procedure" subsection of the *Disability* chapter would first notify her that "[t]he procedure to be followed to appeal a denied claim is explained in the *Administrative* section." It is true that the next sentence in the *Disability* chapter's "Claims Appeal Procedure" subsection states that "any action at law or in equity must be commenced within one year of the denial of the appeal from an initial claim denial, regardless of any state or federal statutes establishing provisions relating to limitations of actions." Even assuming that the majority opinion is correct when it states that this sentence is written in a manner calculated to be understood by the average plan participant and not minimized,[2] this sentence, which makes no

_____

[2]While Scharff has not argued that the language of the plan is unclear, U.S. District Court Judge David C. Bury of the District of Arizona,

mention of ERISA, is of limited use. For one thing, the reader would not yet know that she has a right under ERISA to file suit in state or federal court if her claim for benefits is denied, because that crucial piece of information can only be found in the *Administrative* chapter. In fact, the reader would not yet know the appeal procedure at all, because appeal procedures are explained later, in the *Administrative* chapter.

Once she found the *Administrative* chapter of the Summary Plan Description, there is a subsection titled "Your Right to Appeal a Denied Claim." This subsection deals with internal, administrative claims procedures and would not alert the reader to her right to file an action in federal court if her appeal is denied.[3]

---

reviewing this same Raytheon Summary Plan Description, noted his own difficulty in locating the one-year limitation, and further observed that "it is dubious that a lay person would understand that her limited right to file any 'action at law or in equity' referred to her right under ERISA to 'file suit in state or federal court.' " *Solien v. Raytheon Long Term Disability Plan*, No. CV 07-456, 2008 WL 2323915 at *7 (June 2, 2008 D.Ariz.).

[3] In its Factual and Procedural History, the majority opinion describes the Summary Plan Description's *Administrative* chapter as including, on the same page as the "Your Right to Appeal a Denied Claim" section, a subsection with the large, bold heading "**Special Rules for Disability and Health Claims.**" This subsection states:

> With respect to disability and health plans, including claims arising under the medical, prescription drug, vision, dental, health care reimbursement account, and employee assistance plans, time limits for deciding and appealing claims are significantly different from those for claims under RAYSIP [Raytheon Savings and Investment Plan] and the insurance plan.

The majority opinion suggests that this subsection "cautions" the reader that there are different time limitations on filing suit under ERISA in federal court from the denial of a disability claim. But even the Raytheon Plan defendants acknowledge in their briefing that this "Special Rules for Disability and Health Claims" subsection of the plan has *nothing* to do with time limits on filing claims in federal court. Instead, as explained by the defendants, this subsection describes "time limits for *administrative* review of health and disability claims, as opposed to other types of welfare

In sum, the *Administrative* chapter is the only place a plan participant would definitively learn that she has the right under ERISA to file suit in court if her claim for benefits is denied by the plan administrator. But the *Disability* section is the only place she would learn that there is a one-year statute of limitations on filing an "action at law or in equity." The plan's one-year limitation only becomes clear after a coordinated reading of the two passages, bouncing a lay reader back and forth in a way that obscures the importance of the one-year filing deadline. I would hold that this plan does not satisfy the statutory and regulatory requirements governing Summary Plan Descriptions because it is not "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a).

## II.

The majority opinion also hesitates to apply the doctrine of reasonable expectations in this case, and finds crucial the distinction between a self-funded plan (the kind of plan at issue here) and an insured plan. It concludes that our case law is unclear as to whether the doctrine of reasonable expectations can be applied to a self-funded plan. Because we have already applied the doctrine of reasonable expectations to a self-funded plan in *Winters v. Costco Wholesale Corp.*, 49 F.3d 550 (9th Cir. 1995), I see no reason why we would not do so here.

_____

benefit claims" (emphasis added). A person who reads the sentence at the beginning of the subsection warning that disability claimants face "significantly different" time limits for deciding and appealing claims would not learn anything about the one-year statute of limitations on filing an ERISA claim in federal court. Later in the *Administrative* chapter is a subsection titled "Your Rights under ERISA" and within that subsection, a smaller heading that states "Enforce Your Rights." Under that smaller heading, the reader would learn that if she "ha[s] a claim of benefits that is denied or ignored in whole or in part, [she] may file suit in a state or federal court."

In *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994), we "adopt[ed] the doctrine of reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance contracts." In that case, the plan administrator "chose to bury one of the plan's most significant provisions amidst definitions, rather than forthrightly stating the preexisting conditions exclusion in the operative clauses of the plan description." *Id.* at 385. We held that the district court correctly found "that the lack of a clear, plain and conspicuous statement of the exclusion" rendered the exclusion provision unenforceable. *Id.* at 386.

Later, in *Winters*, we applied the reasonable expectations doctrine in a case involving a self-funded ERISA health benefits plan, such as the plan at issue in this case. 49 F.3d at 555. In *Winters* we applied the doctrine and determined in a reasoned and thoughtful discussion that the petitioner had no reasonable expectation of coverage. *See id.* at 554-55 (describing the exclusionary clauses in the summary plan description and observing that there was "no evidence in the record upon which a reasonable trier of fact could find an objective, reasonable expectation of coverage").

Here, the plan administrators allotted Scharff one-quarter of the amount of time she would otherwise have had to file a complaint in federal court,[4] but failed to announce this drastic change in a clear, plain and conspicuous statement. The one-

---

[4]ERISA does not contain a statute of limitations for suits brought to recover benefits, so to determine the applicable statute of limitations, we "look to the most analogous state statute of limitations." *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643 (9th Cir. 2000) (citing *Flanagan v. Inland Empire Elec. Workers Pension Plan*, 3 F.3d 1246, 1252 (9th Cir. 1993)). In California, looking to California Code of Civil Procedure § 337, the applicable statute of limitations is four years. *Wetzel*, 222 F.3d at 648. In this case, the plan administrators slashed that four-year-period to one year, and buried this pivotal change within the Summary Plan Description.

year deadline was buried in the confusing Summary Plan Description. Even if this plan satisfied the statutory and regulatory disclosure requirements, I would hold that the doctrine of reasonable expectations, as articulated in *Saltarelli* and *Winters*, should apply to prevent Scharff's claim from being dismissed for failure to meet the one-year statute of limitations.

## III.

If one thing is clear, it's that this plan is confusing. ERISA declares that "owing to the lack of employee information and adequate safeguards concerning [the operation of employee benefit plans], it is desirable in the interests of employees and their beneficiaries . . . that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans[.]" 29 U.S.C. § 1001(a). Raytheon's Summary Plan Description does not provide the required safeguards either under ERISA or under the doctrine of reasonable expectations. I respectfully dissent.