**Gary KING, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF ILLINOIS et al., Defendants.**

**Case No. 3:13–CV–1254–CAB–JMA.**

United States District Court, S.D. California.

Signed May 13, 2015.

Craig A. Miller, Law Offices of Craig A. Miller, San Diego, CA, for Plaintiff.

Eileen Regina Ridley, Foley and Lardner LLP, San Francisco, CA, Archana R. Acharya, Foley & Lardner LLP, Ji Hae Kim, Melinda A. Gordon, Stephen H. Harris, Lawrence Levendosky, Paul Hastings LLP, Los Angeles, CA, for Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

CATHY ANN BENCIVENGO, District Judge.

This matter is before the Court on Defendants' motions for summary judgment. Specifically, Defendants United Parcel Service of America, Inc. ("UPS"), and UPS Health and Welfare Package for Retired Employees (the "Plan," and together with UPS, the "UPS Defendants") filed a motion for summary judgment [Doc. No. 48] on the first, second, third and fifth causes of action. Defendant Health Care Service Corporation doing business as Blue Cross and Blue Shield of Illinois ("Blue Cross") joined the UPS Defendants' motion. [Doc. No. 49.] Blue Cross also filed a separate motion for summary judgment on the fourth cause of action. [Doc. No. 50.] The motions have been fully briefed, and the Court has deemed the motions suitable for determination without a hearing. For

the reasons discussed below, the motions are granted.

## I. Background

### A. The UPS Retiree Plan

Plaintiff Gary King retired from UPS on March 14, 2011. Upon his retirement, King's wife, Linda King, became a participant in and beneficiary of the Plan. The Summary Plan Description (the "SPD") for the Plan describes the substantive benefits provided and the procedures for appealing denials of claims. [Doc. No. 15–3 at 3.]

#### 1. Lifetime Maximum Benefit Language from the Plan

The SPD states:

*The Lifetime Benefit Maximum*

Up to $500,000 in lifetime medical benefits (unlimited in HMO Option) can be paid for each person participating in the UPS Health and Welfare Package for Retired Employees. Only benefits paid while you receive coverage as a retired employee count toward the $500,000 total. . . .

[*Id.* at 136.] In September 2010, the Retiree Plan issued a "Summary of Material Modifications" (the "2010 SMM") that amended the Plan. The 2010 SMM lists both the UPS Health and Welfare Package (which applies to active employees) and the Plan in the heading. A footer on the last page the 2010 SMM states: "This notice is intended to fulfill UPS's legal obligation to notify employees of material changes to the UPS Health and Welfare Package and the UPS Health and Welfare Package for Retired Employees. This notice formally amends the coverage available under the Plans." [Doc. No. 15–3 at 34.]

Immediately below the header on the first page, the 2010 SMM contains the following language across the page (italics in original):

*This notice details Plan improvements, changes, clarifications, and required notifications effective January 1, 2011, unless otherwise noted. Items noted with an asterisk (\*) do not apply to retirees or their covered dependents. You should keep this with your UPS Health and Welfare Package and UPS Health and Welfare Package for Retired Employees Summary Plan Description for future reference.*

[Doc. No. 15–3 at 31.] Immediately below this italicized language the text divides into two columns. At the top of the left-hand column is the heading "Health Care Reform \*" in bold and using what Defendants described in their motions to dismiss as "Ariel" [sic] font, followed by a paragraph of single-spaced text. After this paragraph, there is a double-space followed by the heading "Grandfather Plan Status" in bold and in the same character size as the previous heading, but this time in what Defendants described as "Times New Roman" font. Under this second heading are two paragraphs of single-spaced text separated by a double-space. The first sentence of the first paragraph reads: "UPS believes this Plan is a 'grandfathered health plan' as defined under PPACA."[1] The last sentence of the first paragraph reads: "For example, PPACA's prohibition against lifetime limits on 'essential benefits' does apply to grandfathered health plans."

Underneath these two paragraphs is a third heading also in bold Times New Roman font followed by five paragraphs, each separated by a double-space, taking the reader onto the second page of the 2010 SMM. Approximately a third of the way down the left-hand column on the second

---

1. PPACA stands for the Patient Protection and Affordable Care Act.

page is a fourth heading, "Elimination of Lifetime Maximum Benefits," again in bold Times New Roman font. The first sentence of the single paragraph under this fourth heading reads: "Lifetime dollar limits on aggregate benefits will be eliminated from your Plan effective January 1, 2011." There are then three more bold headings in Times New Roman font leading onto the second column of the second page. Then, there is the bold heading, "Mental Health Parity", which is in the same Arial font as the very first heading for "Health Care Reform", followed by single-spaced text and then a bold heading in Times New Roman, and so on. The only asterisk in the entire document is the one that appears following the initial "Health Care Reform *" heading.

### 2. Plan Administration and Appeals Process

UPS is the Plan Administrator and the Plan Sponsor. [Doc. No. 15–3 at 143144.] The SPD states:

> [UPS] shall have the exclusive right and discretion to interpret the terms and conditions of the Plan, and to decide all matters arising in its administration and operation, including questions of fact and issues pertaining to eligibility for, and the amount of, benefits to be paid by the Plans. Any such interpretation or decision shall, subject to the claims procedure described herein, be conclusive and binding on all interested persons.... The Plan Administrator may delegate certain discretionary authority to one or more committees.

[Doc. No. 15–3 at 143.] The SPD also states that UPS is allowed to delegate its administrative duties to outside administrative service providers and states that medical coverage under the Plan is administered by several entities, including Defendant Blue Cross. [*Id.*]

The SPD describes a two level appeals process for denied claims. The first level appeal must be filed with the claims administrator (i.e., Blue Cross) within 180 days of receipt of the initial written denial from the claims administrator. [Doc. No. 15–3 at 131.] If the first level appeal is denied, a second level appeal must be filed with the UPS Claims Review Committee ("CRC") within 60 days of receipt of the first level appeal denial from the claims administrator. [Doc. No. 153 at 132.]

### B. Plaintiff's Medical Claim

In November 2012, Mrs. King suffered an infection which required back surgery and extensive post-surgery medical care and rehabilitation. It appears that Mrs. King, or someone on her behalf, contacted Blue Cross in some manner on multiple occasions to seek pre-approval for some of her medical procedures. Along these lines, Plaintiff's opposition includes several letters dated between November 28, 2012, and February 11, 2013, from Blue Cross to Mrs. King indicating approval of certain procedures "as medically necessary as defined by the member's Health Care Benefits booklet or [SPD]." [Doc. No. 59–2 at 5–23.][2] The letters also state:

> Approval through the Health Care Management Department is not a guarantee of payment of benefits. Payment of benefits is subject to several factors, including, but not limited to, eligibility at the time of service, payment of premiums/contributions, amounts allowable for services, supporting medical documentation and other terms, conditions, limitations and exclusions set forth in your ... [SPD].... You remain responsible for any out-of-pocket requirements,

---

**2.** These letters indicate that they are "in response to a request for service(s)/procedure(s)," but evidence of the actual requests from Mrs. King is not in the record.

including, but not limited to, coinsurance, copayments, deductibles and/or non-covered charges.

[*See, e.g.,* Doc. No. 59–2 at 8.]

On or around February 19, 2013, Plaintiff received an Explanation of Benefits ("EOB") from Blue Cross concerning claims for medical services Mrs. King received in November 2012. [Doc. No. 59–2 at 25–26.] The EOB stated that $949,755 was billed by the medical provider, of which $133,601.41 was approved for coverage, and that Plaintiff may owe the medical provider $578,551.34. [*Id.*] The EOB explained that the reason the majority of the services listed on the EOB were not covered was because the maximum benefit under the Plan had been met. [*Id.* at 26.] On March 14, 2013, Blue Cross sent Plaintiff a letter stating that Mrs. King had exceeded her lifetime maximum benefit on January 1, 2013. [Doc. No. 50–2 at 13.]

On March 14, 2013, Mrs. King sent a letter to the Blue Cross "Claim Review Section" concerning the EOB. [Doc. No. 15–3.] On May 30, 2013, Mrs. King filed the instant lawsuit. There is no evidence in the record that Blue Cross had responded to Mrs. King's letter at the time the complaint was filed. On June 3, 2013, Plaintiff's counsel sent a letter to the CRC, attaching a copy of the complaint and asking UPS to "immediately reconsider its decision to impose the lifetime dollar amounts on [Mrs. King's] claim." [Doc. No. 15–3 at 179–180.] On June 14, 2013, the CRC responded to Plaintiff's counsel stating that the June 3, 2014 letter had been forwarded to Blue Cross for completion of the first level appeal review, and advising that if the first level appeal is denied, Mrs. King would have the right to file a second level appeal with the CRC. [Doc. No. 15–3 at 173–174.] On July 10, 2013, Blue Cross sent Mrs. King a letter stating that her first level appeal was denied. [Doc. No. 50–2.]

On September 9, 2013, Plaintiff filed a first amended complaint, adding allegations that Blue Cross had denied her first level appeal. The FAC asserts claims for declaratory relief, breach of contract, and breach of fiduciary duty and prays for payment of the full amount of Mrs. King's medical bills associated with her back surgery and subsequent care and a declaration that the Plan does not have a lifetime maximum benefit limit.

Defendants moved to dismiss the first amended complaint, arguing, among other things, that the italicized language at the top of the 2010 SMM combined with the asterisk next to the "Health Care Reform *" heading on the first page makes clear that the language on the second page stating that the lifetime maximum benefit will be eliminated does not apply to the Plan. In opposition to the motions to dismiss, Mrs. King argued that the 2010 SMM was ambiguous at best and does not make clear that the lifetime limit still applies to the Plan. The Court denied the motions on June 18, 2014, finding that the 2010 SMM was ambiguous as to whether the Retiree Plan was subject to a $500,000 lifetime maximum benefit, finding that "both parties' interpretations are reasonable," and that "the distinction in font type without more, such as indentation of the subheadings, numbering, or different sized text may not even alert the average plan participant that the Arial headings are 'major headings' and that the Times New Roman headings are subheadings within each major heading." [Doc. No. 31 at 8.]

On July 11, 2014, the CRC wrote to Plaintiff's counsel advising that the CRC would be meeting on August 7, 2014, to construe the Plan in light of the Court's order denying the motions to dismiss. [Doc. No. 48–2 at 10.] The letter invited

Plaintiff's counsel to provide any evidence or argument for consideration by the CRC. On July 18, 2014, Plaintiff's counsel responded: "Mrs. King has exhausted her administrative rights. Her claim for payment of benefits dues and owing is now properly before the United States District Court, which has exclusive jurisdiction of the matter." [Doc. No. 48–2 at 12.] On August 15, 2014, the CRC sent Plaintiff's counsel a four-page letter explaining the CRC's interpretation of the Plan, including the language the Court deemed ambiguous, "as having retained the lifetime benefit maximum for retirees and covered defendants under the Plan even after the effective date of the 2010 SMM." [Doc. No. 48–2 at 7.]

On October 23, 2014, Defendants filed the instant summary judgment motions. On December 26, 2014, Mrs. King passed away, and on January 26, 2015, the Court ordered that Mr. King be substituted as Plaintiff.

## II. Legal Standard

Ordinarily, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "in the ERISA context, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'" *Harlick v. Blue Shield of California,* 686 F.3d 699, 706 (9th Cir.2012).

## III. Discussion

### A. Standard of Review of ERISA Plan Determinations

The first question for the Court is the standard of review. Defendants argue that the Court is required to review the CRC's determination that the Plan contains a lifetime maximum benefit of $500,000 that applies to Mrs. King's claims under an abuse of discretion standard. Plaintiff does not dispute that an abuse of discretion standard applies, presumably because the law is well settled that the standard applies when, as is the case here, an ERISA plan confers "discretionary authority as a matter of contractual agreement." *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir.2006) (*emphasis* in original) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Further, "[a]buse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest." *Abatie,* 458 F.3d at 965; *see also Conkright v. Frommert,* 559 U.S. 506, 512, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010) ("[W]hen the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict."). "In such cases, the conflict is a factor in the abuse of discretion review. The weight of that factor depends on the severity of the conflict." *Harlick,* 686 F.3d at 707 (internal quotations and citations omitted).

"[A]n insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest." *Id.; McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1108 (9th Cir.2000) ("[A]n apparent conflict of interest exists whenever a plan administrator is responsible for both funding and paying claims.").

"The conflict is less important when the administrator takes 'active steps to reduce potential bias and to promote accuracy,' such as employing a 'neutral, independent review process,' or segregating employees who make coverage decisions from those who deal with the company's finances.". *Harlick,* 686 F.3d at 707. In addition, "[w]hen an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Abatie,* 458 F.3d at 972 (internal quotations omitted).

■■■ Here, the SPD states UPS is the Plan Administrator and funding source for the Plan. However, UPS delegated its exclusive discretion to interpret the Plan terms to the CRC [Doc. No. 48–2 at 2], which the Plan explicitly permits [Doc. No. 15–3 at 143]. The CRC in turn consulted with outside counsel separate from defense counsel in this litigation before reaching its decision. [Doc. No. 48–2 at 3.] In addition, the CRC gave Plaintiff an opportunity to participate in the second level review process, and Plaintiff declined. Further, Plaintiff has not offered any evidence or argument as to how any conflict impacted the CRC's decision. *See generally Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 117, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (noting that a conflict is "more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision."); *Abatie,* 458 F.3d at 969 ("The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history."). Accordingly, the CRC's decision is entitled to the broad deference required by the

abuse of discretion standard, notwithstanding that UPS is both the administrator and funding source for the Plan.

## B. The CRC Did Not Abuse Its Discretion

■■■ Under the abuse of discretion standard, a plan administrator's decision to deny benefits must be upheld "if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." *McDaniel,* 203 F.3d at 1113. "In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion. An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan,* 410 F.3d 1173, 1178 (9th Cir.2005) (internal quotations omitted). The "inquiry is not into whose interpretation of the plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 553 (9th Cir.1995) (quoting *Barnett v. Kaiser Found. Health Plan, Inc.,* 32 F.3d 413, 416 (9th Cir.1994)).

Here, the CRC provided Plaintiff with a four-page letter explaining the basis for its decision that the Plan is subject to a $500,000 lifetime maximum benefit. As the Court held in its denial of Defendants' motions to dismiss, this interpretation is reasonable based on the language of the SPD and 2010 SMM. Thus, the CRC's interpretation and decision with respect to Plaintiff's benefits does not conflict with the plain language of the Plan. Finally, the CRC's decision was solely a matter of interpreting the language of the Plan documents themselves, so it did not involve any

findings of fact. Accordingly, none of the three grounds for finding an abuse of discretion are present, and the Court must defer to the CRC's interpretation that the Plan contains a $500,000 lifetime maximum benefit.

### C. The Doctrine of Reasonable Expectations Does Not Apply

■■■ Plaintiff argues that the CRC's interpretation is unreasonable is because it conflicts with his and Mrs. King's "reasonable expectations," relying on *Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 387 (9th Cir.1994). In *Saltarelli,* the Ninth Circuit held that an exclusion in an ERISA plan was unenforceable because it "was not clear, plain, and conspicuous enough to negate layman [insured's] objectively reasonable expectations of coverage." More recently, the Ninth Circuit summarized the doctrine of reasonable expectations as follows:

> Under the so-called "doctrine of reasonable expectations," which is often applied in interpreting or construing policies of insurance, the meaning of an insurance policy is determined in accordance with the reasonable expectations of the insured. In other words, the meaning of the terms in an insurance policy is to be determined by considering it in light of whether a reasonable person in the position of the insured

would expect coverage. The term "insured's reasonable expectations" refers to what a hypothetical reasonable insured would glean from the wording of the particular policy and kind of insurance at issue, rather than how a particular insured who happened to buy the policy might understand it.

*Scharff v. Raytheon Co. Short Term Disability Plan,* 581 F.3d 899, 904–05 (9th Cir.2009) (quoting 16 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 49:20, at 111–12 (4th ed.2000)).

■■■ The Ninth Circuit has issued inconsistent opinions concerning whether the doctrine of reasonable expectations applies to self-funded benefit plans like the Plan here. *See id.*[3] However, at least in the context of ambiguous plan provisions, it is difficult to distinguish the doctrine of reasonable expectations with the doctrine of *contra proferentem.*[4] And it is well settled that *contra proferentem* does not apply to (1) self-funded ERISA plans or (2) "when a plan grants the administrator discretion to construe its terms" because "it is the administrator who resolves ambiguities in the plan's language." *Day v. AT & T Disability Income Plan,* 698 F.3d 1091, 1098 (9th Cir.2012) (internal quotations and citations omitted); *Shane v. Albertson's Inc.,* 504 F.3d 1166, 1169 (9th Cir.2007) ("[T]he doctrine of *contra proferentem* is not applicable to self-funded ERISA plans ...").[5]

---

**3.** In *Scharff,* the Ninth Circuit acknowledged that *Winters v. Costco Wholesale Corp.,* 49 F.3d 550 (9th Cir.1995), where the Court applied to the reasonable expectations doctrine to a self-funded plan, is in tension with *Estate of Shockley v. Alyeska Pipeline Serv. Co.,* 130 F.3d 403, 407 (9th Cir.1997), where the Court declined to extend *Saltarelli* beyond insured plans.

**4.** The doctrine of *contra proferentem* "holds that 'if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different

interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted.'" *Blankenship v. Liberty Life Assurance Co.,* 486 F.3d 620, 625 (9th Cir.2007). In other words, both the reasonable expectations doctrine and the doctrine of *contra proferentem* would require a Court to adopt an insured/plan member's interpretation of an ambiguous provision.

**5.** *See also Blankenship v. Liberty Life Assur. Co. of Boston,* 486 F.3d 620, 625 (9th Cir. 2007) (stating that *contra proferentem* "applies

Indeed, when both the plan and the beneficiary offer reasonable interpretations of a plan provision (as is the circumstance here and is usually the case whenever there is. an ambiguous provision[6]), application of a reasonable expectation doctrine, which would require adopting the beneficiary's interpretation, cannot be reconciled with use of an abuse of discretion review, which usually requires deferring to the Plan's interpretation. Moreover, the reasonable expectation doctrine arguably conflicts with the Supreme Court's "holding in *Firestone*, which set out a broad standard of deference without any suggestion that the standard was susceptible to ad. hoc exceptions...." *Conkright*, 559 U.S. at 513, 130 S.Ct. 1640; *see also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1101 (10th Cir.1999) ("[T]he reasonable expectation doctrine is inapplicable to the review of an ERISA disability benefits plan under the arbitrary and capricious standard.").[7] Accordingly, the doctrine of reasonable expectations does not allow the Court to jettison the abuse of discretion standard and reject the CRC's reasonable Plan interpretation in favor of the (also reasonable) interpretation sought by Plaintiff.

### D. The Lifetime Maximum Benefit Does Not Violate PPACA

■ Plaintiff next argues that any lifetime maximum benefit in the Plan violates the PPACA. This issue requires an understanding of the interplay between the Public Health Service Act ("PHSA"), ERISA, and. the. PPACA. Among its many other provisions, the PPACA amended the PHSA to ban lifetime limits on the dollar value of benefits for any group health participant or beneficiary. 42 U.S.C. § 300gg–11(a)(1). At the same time, the PPACA added a provision to ERISA stating that the requirements of part A of Title XXVII of the PHSA (as amended by the PPACA), which includes the lifetime limit ban, shall apply to group health plans. ERISA § 715(a)(1) (codified at 29 U.S.C. § 1185d(a)(1)). Meanwhile, Section 732 of ERISA, codified at 29 U.S.C. § 1191a(a)(1), which pre-dates the PPACA states:

> The requirements of this part (other than section 1185 of this title) shall not apply to any group health plan (and group health insurance coverage offered in connection with a group health plan) for any plan year if, on the first day of such plan year, such plan has less than 2 participants who are current employees.

Defendants refer to this statute, which is part of ERISA and pre-dates the PPACA, as the "Retiree Plan Exception," and argues that it exempts employer plans covering only retirees (and therefore fewer than two participants who are current employees) from the coverage mandates of the PHSA, including the amendments thereto by the PPACA.

---

in interpreting ambiguous terms in an ERISA-covered plan except where the plan: (1) grants the administrator discretion to construe its terms, (2) is the result of a collective-bargaining agreement, or (3) is self-funded."); *cf. Weiss v. N. California Retail Clerks Unions and Food Emp'rs Joint Pension Plan*, 222 Fed. Appx. 555, 557 (9th Cir.2007) (noting that an ambiguity "fell to the Administrator to interpret ..., which it reasonably did").

**6.** *See McDaniel*, 203 F.3d at 1110 ("An ambiguity exists when the terms or words of a

. pension plan are subject to more than one reasonable interpretation.").

**7.** *See also Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 124 (3d Cir.2012) ("Notably, every Court of Appeals to have addressed the issue has concluded that a court reviewing a benefits decision for abuse of discretion cannot apply the principle that ambiguous plan terms are construed against the party that drafted the plan.").

For his part, Plaintiff argues that there is a conflict between the "Retiree Plan Exception" and PPACA, meaning that pursuant to section 715(a)(2) of ERISA, codified at 29 U.S.C. § 1185d(a)(2), and which the PPACA also added to ERISA, the lifetime benefit ban applies to retiree only plans. ERISA section 715(a)(2) states:

> to the extent that any provision of this part [Part 7. Group Health Plan Requirements] conflicts with a provision of [part A of title XXVII of the PHSA (as amended by the PPACA) ] with respect to group health plans, or health insurance issuers providing health insurance coverage in connection with group health plans, the provisions of such part A shall apply.

29 U.S.C. § 1185d(a)(2). Thus, according to Plaintiff, because part A of title XXVII of the PHSA (as amended by the PPACA) includes a ban on lifetime limits, while ERISA excludes retiree-only plans from such limits, there is an irreconcilable conflict, meaning section 715(a)(2) requires the PPACA lifetime limit ban to apply.

Defendants' argument is more persuasive. The fact that ERISA excepts retiree only plans from certain group health plan requirements of the PHSA (as amended by the PPACA), while the PHSA does not itself contain a similar exception for retiree only plans, does not create a conflict or reveal any specific intent on the part of Congress that notwithstanding the Retiree Plan Exception, the group health plan requirements of the PPACA are intended to apply to retiree-only plans. Although the interplay and chronology of the various acts necessitated a careful review of the relevant statutory provisions, Plaintiff has

not persuaded the Court that Congress repealed ERISA's Retiree Plan Exception by implication when it enacted the PPACA. *See generally Chemehuevi Indian Tribe v. Jewell,* 767 F.3d 900, 907 (9th Cir.2014) ("[R]epeal by implication is disfavored.").

Another flaw of Plaintiff's argument is that pursuant to Section 732 of ERISA (29 U.S.C. § 1191a(a)(1)), the very conflict language on which Plaintiff relies also does not apply to retiree-only plans. Thus, the requirement that conflicts be resolved in favor of the group health plan requirements in the PPACA does not apply to retiree-only plans.

Finally, although their interpretation is not binding, the Internal Revenue Service, Department of the Treasury; the Employee Benefits Security Administration, Department of Labor; and the Office of Consumer Information and Insurance Oversight, Department of Health and Human Services, stated in the preamble to interim rules related to the PPACA's impact on group health plans that "the exceptions of ERISA section 732 and Code section 9831[8] for very small plans and certain retiree-only health plans, and for excepted benefits, remain in effect and, thus, ERISA section 715 and Code section 9815[9], as added by the Affordable Care Act, do not apply to such plans or excepted benefits." Interim Final Rules for Group Health Plans and Health Insurance Coverage Relating to Status as a Grandfathered Health Plan Under the Patient Protection and Affordable Care Act, 75 Fed.Reg. 34538–01.

In light of the foregoing, the $500,000 lifetime maximum benefit in the Plan does

---

**8.** Internal Revenue Code § 9831(a)(2) excepts retiree-only health plans from the group health plan requirements in Subtitle K, Chapter 100 of the code.

**9.** Internal Revenue Code § 9815 is substantively identical to ERISA § 715 (29 U.S.C. § 1185d).

not contravene the PPACA. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims for declaratory relief and breach of the Plan.

### E. Breach of Fiduciary Duty Claims

■ Plaintiff's third and fourth claims are for breach of fiduciary duty against the UPS Defendants and Blue Cross, respectively. To establish a breach of fiduciary duty, "a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir.2003), *as amended* (Aug. 1, 2003) (quotations and citation omitted); *In re Computer Sciences Corp. ERISA Litig.*, 635 F.Supp.2d 1128, 1140 (C.D.Cal.2009) (same). In addition, "an ERISA fiduciary has ... an affirmative duty to inform when the [fiduciary] knows that silence might be harmful. Accordingly, a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *In re Computer Sciences Corp. ERISA Litig.*, 635 F.Supp.2d at 1139–40.

### 1. UPS Defendants

■ As for Plaintiff's breach of fiduciary duty claim against the UPS Defendants, Plaintiff's opposition does nothing more than cite to ERISA's fiduciary duty requirements and then state that Plaintiff's claim "is based on imposing the lifetime limits on Mrs. King, the deceptive nature of the SPD, Defendants' subsequent failure to advise her that the lifetime limit does not apply to her Plan, and their refus-

al to timely inform her that the [sic] she had exceeded the purported limits." [Doc. No. 59–1.] As discussed above, because the Plan has a lifetime limit, the UPS Defendants did not breach any duties by imposing that limit on Plaintiff. Further, while the SPD and 2010 SMM may have been ambiguous, Plaintiff offers no evidence or explanation as to how they were deceptive. Finally, Plaintiff does not identify any duty on the part of the UPS Defendants to inform her that she had exceeded the lifetime maximum benefits under the Plan, or that the notice that she did receive that the lifetime maximum had been exceeded was untimely. In sum, Plaintiff does not offer any evidence creating an issue of material fact sufficient to defeat summary judgment on his breach of fiduciary duty claim against the UPS Defendants.

### 2. Blue Cross

■ As for Plaintiff's claim for breach of fiduciary duty against Blue Cross, Plaintiff once again fails to create a genuine issue of material fact to defeat summary judgment. Plaintiff premises this breach of fiduciary duty claim either on Blue Cross' misrepresentation about the existence of the lifetime maximum benefit, or in the alternative Blue Cross' failure to adequately inform Plaintiff of the limit. In light of the holding above that the Plan has a lifetime maximum benefit, Plaintiff's breach of fiduciary duty claim is necessarily limited to the latter argument.

■ Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Third party administrators, like Blue

Cross, are not ERISA fiduciaries "when they merely perform ministerial duties or process claims." *Kyle Rys. v. Pacific Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir.1993). With its motion, Blue Cross includes a declaration from an employee with responsibility for the Plan stating that Blue Cross's agreement with UPS requires it to follow the Plan terms when processing claims. Moreover, the Plan and SPD explain that UPS is the Plan Administrator with sole discretionary authority to interpret the Plan terms.

In response, Plaintiff's only evidence of Blue Cross's discretionary authority is Section 8.1(c) of the Plan, but this section refers to UPS and the CRC, not Blue Cross. Likewise, *Meguerditchian v. Aetna Life Ins. Co.*, 999 F.Supp.2d 1180 (C.D.Cal.2014), on which Plaintiff relies, is distinguishable because the claims administrator there had discretionary authority to interpret the plan and determine eligibility.[10] Because Plaintiff offers no evidence that Blue Cross served in anything other than merely a ministerial role or that it had any discretion to interpret the plan terms or determine eligibility, Blue Cross is not an ERISA fiduciary. *See Kyle Rys.*, 990 F.2d at 516.

Moreover, even if Blue Cross is an ERISA fiduciary, there is no evidence that Blue Cross made any misrepresentations to Plaintiff about the plan terms, and the evidence shows that Blue Cross did inform Plaintiff of the lifetime maximum benefit on multiple occasions. Further, Blue Cross's letters approving procedures as medically necessary specifically stated that the approvals were not guarantees of payment and that payment was subject to the limitations in the Plan. Plaintiff does not cite to any authority requiring an ERISA fiduciary to affirmatively advise a plan participant of the status of her lifetime limit within a certain time frame that Blue Cross did not satisfy here. Nor does Plaintiff identify any evidence that Blue Cross actually knew (or could have known) that the lifetime maximum had been exceeded before Blue Cross conveyed that information to Plaintiff in February 2013. Accordingly, Blue Cross is entitled to summary judgment on Plaintiff's breach of fiduciary duty claim.

## IV. Conclusion

For the foregoing reasons, Defendants motions for summary judgment [Doc. Nos. 48, 50] are **GRANTED**.[11] The Clerk of Court is instructed to please enter **JUDGMENT** in favor of Defendants. This case is **CLOSED**.

It is **SO ORDERED**.

---

**10.** *See* 999 F.Supp.2d at 1184 ("The parties here agree that the Plan gives Aetna discretionary authority to interpret the plan's provisions and determine factual matters of eligibility.").

**11.** Because Plaintiff has not succeeded on the merits, his fifth claim for fees under ERISA fails as well. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) ("[A] fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1) ....") (internal quotation omitted).